• In re HARRISON Township.

Upon application by petition to the Court of Quarter Sessions, under the 14th section of the act of the 15th of April, 1834, for the purpose "of erecting a new township, or altering the lines of any township, or of ascertaining and establishing the lines or boundaries of any township, *the order* of the court should contain *an explicit and express direction to the viewers to inquire into the propriety of granting the prayer of the petitioners;* and an omission to direct such inquiry is not cured by a report that the inquiry was made, as it is essential to the validity of the proceedings that it should be contained in the order.

Where the order of the court contained merely the following words, "*if they see cause, or any two of them see cause, to erect a new township,*" the direction was held inferential and insufficient.

The report of the viewers should also contain an explicit opinion as to the propriety of granting the prayer of the petitioners; and this inquiry is their first duty.

Where it is proposed simply to divide a township, a return made of the lines of the old township, with the division lines marked on the draft, is sufficient for all useful and practical purposes. But where it is intended to divide two or more townships, and to erect a new township, the viewers should not only return a draft of the new township, but a draft of the townships as they remain after the new township is stricken off.

A plot or draft appended to the proceedings of former viewers, which were set aside by the court, if referred to and adopted by subsequent viewers in their report, is sufficient.

CERTIORARI to the Court of Quarter Sessions of Lancaster county.

*Dec.* 8. In 1844, a petition was presented to the court, signed by citizens residing within the bounds of the 22d election district of the county of Lancaster, composed of parts of Rapho, Mount Joy, and East Donegal townships, in said county, stating the inconvenience, trouble, and expense, by reason of distance, to which the petitioners were subjected in attending their respective township elections, and praying for the erection of a new township, out of those parts of the said townships as were comprised within the limits of the election district aforesaid. Upon this petition the court appointed Christopher Brenner, Henry M. Reigart, and

Thomas Lloyd, as viewers. Two of the viewers, Reigart and Lloyd, met pursuant to their appointment, and the order of the court, and made, signed, and returned a report erecting a new township, as prayed for by the petitioners, and attached to the said report a plot or draft, with the courses and distances of the said new township, which was designated by the letter A., and also their names written thereon. This report, on exceptions filed thereto, was set aside by the court, on the ground that only two of the viewers were convened. Another view was thereupon granted on the original petition, and other viewers, in place of the former, were appointed by the court. The order directed the viewers so appointed "*to view, and if they see cause, or any two of them see cause,* to erect a new township out of the said townships of Rapho, Mountjoy, and East Donegal, agreeably to the prayer of the petitioners, and make report thereof, *with a plot or draft of such division,* and the courses and distances of the same," &c.

Pursuant to this order, the viewers met and reported as follows : " That we severally met, and having first been duly affirmed according to law, to perform the duties of our appointment impartially, and according to the best of our judgment, we viewed and laid out a new township out of the said townships of Rapho, Mountjoy and East Donegal, which we name Harrison, and which embraces the twenty-second election district of the county of Lancaster. A plot or map of said township, together with a list of the courses and distances of the same, known and designated by the letter B., is hereto annexed." This report was signed by two of the viewers. The only plot or draft which accompanied this report, was the plot or draft made by Reigart and Lloyd, two of the first viewers, and appended to their report, which, as already stated, was set aside by the court. It appeared, therefore, by the paper-book, that the accompanying plot or draft had been detached from the record of the first proceedings and attached to this report by the viewers, who signed the same, and who adopted or designated it by writing thereon the letter B., with their names, respectively. To this report a number of exceptions were filed, which, as they were substantially the same as those assigned in this court, are omitted. The report was confirmed by the court, whereupon this writ was sued out, and the following exceptions assigned here :

1. The court erred in not sustaining the exceptions filed to the report of the commissioners or viewers, and in not setting aside the said report.

The court erred in not setting aside the said report.

2. Because the viewers were not appointed to inquire into the propriety of granting the prayer of the petitioners, as required by the act of Assembly; and the order is erroneous in that respect.

3. The viewers did not make a plot or draft of the townships proposed to be divided, and the division line proposed to be made therein, nor did they make a plot or draft of the township proposed to be laid off.

The only plot or draft which accompanied the proceedings is a plot or draft made by Henry M. Reigart and Thomas Lloyd, two of the viewers who made report to the Court of Quarter Sessions, to August Sessions, 1844, which, on the 3d of February, 1845, was set aside by that court; and the said draft is part of the record of that proceeding, as also the courses and distances referred to.

4. The viewers did not report a plot or draft, as is required by the act of Assembly.

5. The viewers did not report their opinion, as required by the act of Assembly.

6. The viewers did not pursue the order of the court on which they acted.

*Penrose*, in support of the exceptions, cited act of 25th April, 1834, sect. 14; Purdon, (ed. of 1841,) p. 191; Macungie Township, 14 Serg. & Rawle, 67; In re Bethel Township, 1 Barr, 97; Wyalusing Township, 2 Serg. & Rawle, 402; Henderson and West Townships, 2 Watts, 269; 8 Watts & Serg. 43.

*Stevens*, contrà.

*Dec.* 25. ROGERS, J.—The 14th section of the act of the 15th April, 1834, directs that, upon application by petition to the Court of Quarter Sessions for the purpose of creating a new township, or altering the lines of any township, or of ascertaining the lines or boundaries of any township, the court shall appoint three impartial men, if necessary, to inquire into the propriety of granting the prayer of the petitioners; and it shall be the duty of the commissioners so appointed, or any two of them, to make a plot or draft of the township proposed to be divided, and the division lines proposed to be made therein, or of the township proposed to be laid off, or of the lines proposed to be altered of two or more adjoining townships, or of the lines proposed to be ascertained and established, as the case may be, if the same cannot be fully designated by natural lines and boundaries, all which they or any two of them shall report to the next Court of Quarter Sessions, together with their

opinion of the same ; and at the term after that at which the report shall be made, the court shall take such order thereupon as to them shall appear just and reasonable."

The first duty that the commissioners have to perform, is to inquire into the propriety of granting the prayer of the petitioners, whether it be a prayer for the creating a new township, altering the lines of a township, or ascertaining and establishing the lines or boundaries of a township, and to report to the court their opinion of the same, that the court may take such order thereupon as to them may appear just and reasonable.

It seems, therefore, that the order of the court, which is the authority to the commissioners in the performance of their duty, should contain an explicit direction to that effect, and that the report should also contain an equally explicit opinion as to the expediency or propriety of granting the prayer of the petitioners. If the proceedings be defective in either particular, it is an error for which the whole must be set aside. This point was ruled under the act of the 24th of March, 1803, (4 Sm. 30,) of which this act, in this particular, is a transcript, in the case of the division of Macungie township, in the county of Lehigh, 14 Serg. & Rawle, 67. In that case, it did not appear that the men appointed by the court made any inquiry into the expediency of granting the prayer of the petitioners, nor was there any thing in the order directing them to do so. Chief Justice Tilghman says : "Whether it was expedient to make any decision, no opinion was given." This was an omission of great importance, for making a decision is one thing, and forming a judgment on making such decision is another. If the order of the court had been to inquire, in the first place, whether any division was expedient, we know not what would have been the result. In this order there is no direction to the commissioners to inquire into the propriety of erecting a new township, except inferentially from the words, "if they saw cause to erect a new township;" but this we deem insufficient, as the order is defective, except it contains an explicit and express direction to inquire. It may well be that the commissioners supposed that it was their duty to erect a new township, without any inquiry as to its expediency or the truth of the allegations in the petition ; that in consequence of the extent of the township proposed to be divided, the citizens were subjected to very great inconvenience, trouble, and expense in attending their respective township elections, and whether the question of the new township was the only and proper remedy for the same. That this may have been the case is highly probable, be-.

cause, by the report, it does not appear that any inquiry was made as to the propriety of erecting the new township. "We, the undersigned," says the report, "appointed by the within order of court to view, and if we should see cause to erect a new township out of the townships of Rapho, Mountjoy and East Donegal, as therein mentioned, do report: that in pursuance of said order, having been respectively sworn or affirmed according to law, we have viewed and laid out of the said townships of Rapho, Mountjoy and East Donegal, a new township, which new township we name 'Harrison;' the courses and distances of said new township called 'Harrison' accompany and are attached to this report, as also a plot or draft of said township, known and designated by the letter A., as also our names written therein, reference thereunto being had will fully appear. Said new township embraces the boundaries of the election district, No. 22."

Although the case cited does not rule the point, yet we incline to think that an omission to direct the inquiry is not cured by a report that the inquiry was made, for we suppose it to be essential to the validity of the proceedings that it should be contained in the order. The commissioners are sworn or affirmed to perform their duties according to law, and as they are sworn in the terms of the order, the requisition of the act is not complied with, unless the order contains such direction. This is doubtless the safe. practice, and one which best carries out the intention of the legislature.

It is also contended the report is bad because the viewers did not make a plot or draft of the townships proposed to be divided, and the division lines proposed to be made therein, nor did they make a plot or draft of the township proposed to be laid off. The only plot or draft which accompanies the proceedings, is a plot or draft made by Henry M. Reigart and Thomas Lloyd, two of the viewers, who made report to the Court of Quarter Sessions, to August Sessions, 1844, which, on the 3d of February, 1845, was set aside by that court, and the said draft is on the record of that proceeding, as also the courses and distances referred to. Whether the draft was part of the original, or detached from it, as seems to have been the case, matters not, as it was referred to and adopted by the present commissioners. There was no necessity to make a new draft if they were satisfied, and adopted, and referred to the one already made. It would be causing an additional expense for no valuable purpose whatever.

But the next point is attended with more difficulty. Is it sufficient to return a draft or plot of the new township, or must you at

the same time return a draft of the townships from which it is taken off? That this would be more satisfactory there can be no doubt, as it would furnish on the record of the Quarter Sessions not only the boundaries of the new township, but of the others also; and it would be a considerable aid to the court in determining whether it was just and reasonable that a new township should be created. And this is the view taken in Henderson and West Townships, 2 Watts, 270. It is necessary, as is there ruled, to the validity of a report of commissioners appointed to erect a new township or divide an old one, that it should be accompanied by a draft of the old lines of the township, as well as the proposed new lines.

When it is proposed simply to divide a township, a return should be made of the lines of the old township, with the division lines marked on the draft. That is sufficient for all useful or practical purposes. But where it is intended to divide two or more townships, and to erect a new township, the commissioners should not only return a draft of the new township, but a draft of the townships as they remain after the new township is stricken off.

The proceedings quashed.