## Pottstown Ward Reapportionment and Consolidation

*C. Edmund Wells*, for petitioners.
*Joseph A. Suchoza*, for respondents.

GERBER, J., February 9, 1959.—The original petition in this matter, accompanied by the requisite number of signatures, requested this court to consolidate the existing 10 wards of Pottstown into one ward having seven councilmen, pursuant to The General Borough Act of May 4, 1927, P. L. 519, art. VI, sec. 601, as amended, 53 PS §45601 et seq. Thereupon, this court entered an order, dated September 22, 1958, appointing three commissioners "to inquire into the propriety of granting the prayer in the petition and to inquire into the propriety of erecting new wards out of two or more adjoining wards or parts thereof, consolidating two or more wards into one ward, dividing any ward already erected into two or more wards, alter the lines of any two or more adjoining wards, or cause the lines or boundaries of wards to be ascertained and established. . ."

The instant petition was filed by the original petitioners, requesting this court to define and determine the scope of the commission's inquiry, averring that under the provisions of the act, the inquiry of the commission is specifically limited to the propriety of granting the prayer in the petition, to wit, to consolidate the existing 10 wards into one ward. The reason for this petition was the submission to the commissioners of at least one different plan for their consideration. Petitioners contend that the order of this court enlarged the scope of inquiry beyond that provided for in the act.

The controlling provision in the act is:

"Upon its [the petition for reapportionment] presentation, the court shall appoint three impartial men as commissioners, to inquire into *the propriety of granting the prayer in the petition*": The General Borough Act of May 4, 1927, P. L. 519, sec. 602, as amended, 53 PS §45602. (Italics supplied.)

The sole question to be decided is the proper interpretation of the italicized phrase. Two alternative meanings are possible: That the prayer in the petition submitted to the court controls and limits the scope of the inquiry, or that the phrase refers to the broad directions contained in the prior section of the act, 53 PS §45601, which reads:

"The court of quarter sessions, upon petition, may divide boroughs into wards, erect new wards out of two or more adjoining wards or parts thereof, consolidate two or more wards into one ward, divide any ward already erected into two or more wards, alter the lines of any two or more adjoining wards, or cause the lines or boundaries of wards to be ascertained and established."

In its initial order, this court was of the opinion that the latter interpretation was the correct one and thus incorporated the language of the act into the order. After further study in the matter, the court is still of the same mind.

Although there are no precedents on this exact issue, there are several decisions that have dealt with closely related questions and these rulings show that the commission's inquiry is limited only by the general language of section 601 of the act, 53 PS §45601.

The leading decision and one of the few times the Supreme Court has spoken on this matter has been in In re division of Gettysburg into wards, 90 Pa. 355 (1879). That case arose under the Act of 1874 which contained the same statutory language as controls under the present act. The issue raised therein was whether, in a proceeding to divide a borough into wards, it is necessary for petitioners to ask for a division into a definite number of wards. The court stated:

"It is contended that the omission to do this [recommend a specific division] rendered the petition fatally

defective. We do not think so. While the course contended for the plaintiff in error, may perhaps be pursued without vitiating the proceedings, there is nothing in the act requiring it to be done. On the contrary we think the proper practice, as indicated by the act, is to ask for a division, . . . leaving the details as to the number of wards and the boundaries thereof to the judgment of the commissioners, under the supervision of the court": Page 358.

The reason for the court's concept of the proper practice is found further in the same paragraph:

"An opportunity is thus afforded to all parties interested to appear before the commissioners and be heard for or against division, as well as in relation to the number of wards and the boundary lines thereof, to be ascertained and established. In this way the commissioners are enabled to reach a result, on all the questions involved, that will be more generally satisfactory to the people of the borough, than if the details of their work were suggested by the petitioners. . . . The most ample provision is thus made for obtaining the views and consulting the wishes of all concerned, and in the end reaching a just and proper conclusion."

The court was cautious to not specifically approve or disapprove of a petition containing a specific prayer for division, but held that a general prayer in the statutory language was "the proper practice." Later cases inferred from this language that the commissioners were to exercise their own judgment and could not be limited by a specific request for division or reapportionment: In re Plymouth Borough Consolidation, 46 Luz. 182 (1956); Waynesburg Borough's North Ward, 29 Pa. Superior Ct. 525 (1905); In re First Ward of Hanover Township, 17 D. & C. 96 (1933); North Chester Election District, 3 Pa. C. C. 247 (1887); Shamokin Borough Division, 6 Pa. C. C. 573 (1889).

The Hanover Township case, supra, is closely analogous to the present case. Although that decision involved a first class township division, the statutory language is the same as for a borough division. See 53 PS §55402. Petitioners therein contended that the commissioners were restricted to inquiring into the prayer of the petition to divide one ward into two wards. The court stated:

"We cannot agree with this construction of the statute. If there is any occasion to divide the ward, the commissioners should have the power of recommending, as provided by the statute, whether it should be divided into two or more wards, and this construction seems to be supported by all the authorities, and, therefore, the petition is dismissed": Page 96.

The petition in In re Plymouth Borough Consolidation, supra, requested a reduction of 13 wards into seven wards. The basis of a petition to dismiss the request was that the initial petition improperly specified the number of wards to be created. The court, at page 184, stated:

"True, the petitioners do 'suggest' a certain formula for the carrying out of the prayer of the petition, but this suggestion is in no wise binding upon the commissioners who are empowered to use their own judgment and discretion in determining the propriety of granting the prayer of the petition for a consolidation of the thirteen wards. . . ."

The court, by construing what was intended as a specific request as a suggestion, avoided having to make a finding that the petition was defective because of its specificity.

In Waynesburg Borough's North Ward, supra, there was an objection on the basis that the petition was defective because it gave a specific plan. The court overruled the objection, stating:

"If there were anything in the record to show that the court felt constrained by the petition to adopt the lines of division therein recommended, without exercising its own judgment in the premises, or notwithstanding its own judgment formed upon a consideration of all the pertinent facts and circumstances that the convenience of the electors and the public interests would be more fully accomplished by a different division, or by no division at all, there would be merit in this assignment of error. But there is no ground whatever for surmising even that the court proceeded upon any such erroneous theory as to its powers and duties": Page 528.

Here too, the court overcame an objection that the petition was defective because it stated a specific plan by holding that petitioners' plan was only a recommendation, which did not restrict the inquiry initiated by the petition.

The court, in North Chester Election District, supra, stated:

"The third exception is that the petition and order to the commissioners restricts them to a definite number of districts. This is also a sound exception. The commissioners should be free to divide the territory into as many districts as may be proper": Page 248.

Therefore, it can be seen that the independent judgment of the commissioners is a paramount consideration. They cannot be restricted by a specific request. In Plymouth Township Petition, 72 Montg. 457 (1956), this court upheld the recommendation of the commissioners over the objections of certain people who had advanced a different plan. This indicates that the commissioners and the court are not restricted to one plan, but can consider several and then choose the one they believe most suitable.

Further, there is a clear implication in the Supreme Court opinion in In re division of Gettysburg into wards, supra, that the statutory language "inquire into the propriety of granting the prayer in the petition", refers only to whether there should be a division or consolidation and not to any plan thereof:

". . . the first duty of the commissioners is to inquire into the propriety of making a division. If they or any two of them are of opinion that it is proper, it is made their duty to prepare a plot or draft of the borough, indicating thereon the wards into which, in their judgment, it should be divided . . .": Page 358.

Thus, the prayer of the petition is the prayer for a change in the borough's ward make-up. A request for a specific change is surplusage and the order of this court appointing the commissioners and instructing them as to the scope of their inquiry remedied any defect in the original petition requesting a consolidation into one ward. The meaning of the order of this court was a direction to the commissioners to exercise their judgment and consider any and all plans proposed to them. The commissioners cannot be restricted to the proposal of petitioners.

The original petitioners cite three cases in support of their contention that a specific prayer is proper and limits the scope of the inquiry solely to a consideration of their plan. This court, after a thorough consideration of these cases is of the opinion that In re division of Plum Township, 83 Pa. 73 (1876) ; In re Harrison Township, 5 Pa. 447 (1846) ; and Brown v. Fowzer, 114 Pa. 446, 6 Atl. 706 (1886), do not stand for the proposition that a specific plan is proper and thereby limits the scope of the commissioners' inquiry. These three cases are all concerned with the technical requirements of an order and report on a petition for a division or consolidation and hold only that the court

order and commissioners' report must use the statutory language which directs the commissioners to "inquire into the propriety of granting the prayer of the petition". The cases do not deal with the issue of whether or not the prayer can be specific.

Petitioners' contention that only their plan should be considered because they will bear the expense of the proceeding is without merit. Section 605 of the act, 53 PS §45605, provides that the costs shall be paid by the borough or petitioners, as directed by the court. This court has the power to insure that petitioners will not bear a disproportionate share of the costs.

And now, to wit, this February 9, 1959, in view of the foregoing, the order of this court defining the scope of the commissioners' inquiry is that the commissioners shall inquire into the propriety of granting the prayer of the petition and consider the various proposals and plans submitted to them and then decide which, in their independent judgment, is the most suitable and proper plan.