## Pressman's Appeal

*William A. Gray*, for appellants.

*James Ryan* and *John F. Solomon*, for protestants.

*J. Myron Shimer*, Deputy Attorney General, for Pennsylvania Liquor Control Board.

LEVINTHAL, J., June 15, 1945.—This matter is before us on an appeal from the refusal of the Pennsylvania Liquor Control Board to grant an application for the transfer of a restaurant liquor license to appellants for premises 1837 Chestnut Street, Philadelphia, Pa.

It is admitted in this case: (1) Appellants are fit persons to have such a license; (2) their establishment at 1837 Chestnut Street is a bona fide restaurant, properly equipped and otherwise entirely suitable for such a license; and (3) appellants have complied with all the formalities of the law applying to the proposed transfer of license.

The Liquor Control Board nevertheless has refused the said transfer of license solely by reason of the following circumstances: (1) Representatives of the Department of Public Safety of the City of Philadelphia testified at the hearing that the department is opposed to the issuance of a license at this location because it is of the opinion "that there are already an excessive number of liquor licenses in the central city area and that there is, in its judgment, no need for any additional licensed establishments in this section of the city"; and (2) representatives of the Chestnut Street Business Men's Association and a number of property owners in the 1800 block of Chestnut Street testified that they agreed with the views of the police depart-

ment and, in addition, they feared "the issuance of a license for these premises might have the effect of lowering the prestige and dignity of the neighborhood".

On the hearing before us, it was agreed that all of the testimony before the board be considered as though presented de novo.

The objections raised by the police department are, in our opinion, not tenable for the following reasons: (1) In a large metropolitan area such as is covered by the central city district of Philadelphia, the total number of licensed establishments furnishes no proper criterion in determining whether or not a license should be granted to a particular location therein. As a matter of fact, it appears from the testimony that in the 1800 block of Chestnut Street there is at present but one licensed establishment, namely, that of the Belgravia Grille at 1811 Chestnut Street; (2) nor do we consider it helpful in deciding whether or not there is an excessive number of liquor licenses in any locality to group together, as the police department has attempted to do in this case, all the taprooms, bars, clubs, and bona fide restaurants in the vicinity. It is true that all of these have in common the element of dispensing liquors, but each is a distinct type of establishment, catering to different needs and different classes of customers. It does not seem reasonable to place a restaurant, where the consumption of liquor is but an incident in the partaking of a meal, in the same category as establishments commonly known as saloons and taprooms.

Furthermore, there is no reasonable justification for the fears expressed that the transfer of the license would have the effect of lowering "the prestige and dignity" of the neighborhood. According to the testimony the restaurant of appellants is a first-class establishment, operated in a proper manner and patronized by many respectable and eminent citizens of the community, some of whom testified on behalf of appellants. This block of Chestnut Street is predominantly a busi-

ness location, and we are at a loss to understand how the presence of such a restaurant in this location could conceivably have a deleterious effect on the neighborhood.

For these reasons, assuming that the Liquor Control Board and the court of quarter sessions on appeal have a broad discretionary power to grant or deny proposed transfers of liquor licenses, we think that to refuse the instant application would constitute an abuse of discretion.

Moreover, we are of the opinion that the law does not vest in the Liquor Control Board, or in us, any discretionary power to refuse to grant a transfer of a license on any of the grounds here relied on by appellee.

The powers of the Liquor Control Board and of this court in the matter of transfer of liquor licenses are governed by the provisions of the Pennsylvania Liquor Control Act of November 29, 1933, Sp. Sess., P. L. 15, as amended. The pertinent provisions of the act are as follows:

Section 403 (47 PS §744-403): "Upon receipt of the application, the proper fees, and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, and the applicant seeks a license for a hotel, restaurant or club as defined in this act, the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, may, in its discretion, issue a license: Provided, however, That, in the case of any new license or the transfer of any license to a new location, the board may, in its discretion, grant or

refuse such new license or transfer if such place, proposed to be licensed, is within three hundred feet of any church, hospital, charitable institution, school or public playground, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil. . . ."

Section 408(a) (47 PS §744-408): "(a) Licenses issued under this act may not be assigned. The board is hereby authorized to transfer any license from one person to another, or from one place to another within the same municipality or both, as the board may determine; but no transfers shall be made to a person who would not have been eligible to receive the license originally, nor for the transaction of business at a place for which the license could not originally have been issued lawfully. Upon any refusal to grant a transfer, the person aggrieved shall have the right to appeal to the court of quarter sessions in the same manner as herein provided for appeals from refusals to grant licenses. The action of the court of quarter sessions shall be final."

Whether or not these provisions should be construed as conferring a broad discretionary power in the Liquor Control Board and the court of quarter sessions with respect to granting or refusing transfers of liquor licenses is the subject of conflicting judicial decisions.

One line of authorities holds that while the act confers broad discretionary powers on the Liquor Control Board with respect to the transfer of club licenses, no such discretion exists with respect to the transfer of other types of liquor licenses, except where the proposed new location is within 300 feet of a church, hospital, charitable institution, school or public playground, or is a place where the principal business is the sale of liquid fuels or oil: Larkin's License, 35 D. & C. 684 (1939); In re Popp's License, 41 D. & C. 500 (1941); Appeal of Gentile et al., 43 D. & C. 53 (1941). The reasoning of these cases is as follows: (1) ". . . if

it were the intention to give the board full discretion the act would have so stated and would not have specifically set forth those instances in which the discretion of the board might be exercised." (Quoting from Popp's License, supra, p. 503) ; (2) the act makes it mandatory to grant hotel or restaurant licenses where the applicants have complied with the requirements of the act and specifically provides for the exercise of discretion only in the case of a club, or other establishments within the aforementioned radius of a church, hospital, charitable institution, school or playground.

"It is unreasonable to assume that the act was intended to give the board wider discretion in the case of a license transfer than it had at the time of the original application": Popp's License, supra, p. 503. Furthermore, the maxim expressio unius est exclusio alterius is applicable.

Another line of cases holds that the act does confer a broad discretionary power in the Liquor Control Board to grant or refuse a transfer of license. See In re Transfer of Liquor License, 46 D. & C. 93 (1943), Loftus' Appeal, 50 D. & C. 422 (1944), Brodsky's License, 44 D. & C. 227 (1942), and the following unreported decisions of the Quarter Sessions Court of Philadelphia County: Appeal of Vincent J. Lynch, MLD no. 795 (1941) ; Appeal of Samuel Shockowitz and William Werndel, MLD no. 806 (1941) ; In re Petition of Reba Ulitsky, MLD no. 818 (1941) ; and In re Appeal of James A. Blair, MLD no. 949 (1945). These cases proceed on the theory that (1) "a measure of discretion in a liquor-licensing authority . . . is necessarily inherent in its fundamental nature". This "distinguishes it from a mere agency for the issuance of such licenses as mercantile, hunting, or dog licenses, which are primarily employed for purposes of taxation, rather than as an exercise of the police power over a business peculiarly requiring regulation in the public interest" (quoting from In re Transfer of Liquor License, supra, p. 94) ; (2) the provision in section

408 of the act that "the board is hereby authorized to transfer any license from one person to another, or from one place to another within the same municipality or both, *as the Board may determine*" (italics supplied) indicates a legislative intent to confer on the board broad discretion in the matter.

We need not consider which of these two conflicting lines of authority expresses the better view because, in our opinion, a fundamental principle, which we regard as controlling, has been overlooked in all of the cases cited above. If the act be construed as conferring on the Liquor Control Board or on the court of quarter sessions a broad discretionary power to grant or to refuse a transfer of liquor license in accordance with its concept of the public interest, the effect would be to render the act unconstitutional. For it is a basic constitutional principle that the legislature is powerless to delegate its legislative functions to an administrative board without providing a definite criterion for the guidance of the board.

In Bell Telephone Co. of Pa. v. Driscoll et al., 343 Pa. 109, at pp. 113, 114 (1941), the Supreme Court well pointed out:

"The constitution of this Commonwealth, in Articles II, §1, provides: 'The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives.' In *Boro of W. Phila.*, 5 W. & S. 281, 283, we said: 'Under a well-balanced constitution, the legislature can no more delegate its proper function than can the judiciary.' The limits upon the power to delegate authority are set forth in the leading case of *Locke's Appeal*, 72 Pa. 491, 498: 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. . . .' Where the legislature establishes

primary standards and then delegates to an administrative body the power to determine some fact or state of things upon which it makes or intends to make its own action depend, it is the legislature which has legislated and not the administrative body."

In the Pennsylvania Liquor Control Act, here under consideration, except with respect to the fitness of the applicant, to the proximity of the proposed establishment to a church, hospital, charitable institution, school, or public playground, or to a place where liquid fuels and oil are sold, no standards are explicitly set up to guide the board as to when it should grant and when it should refuse a proposed license transfer. Nor is the situation altered by treating the act as providing by implication that the board shall not authorize a transfer whenever it finds it inimical to the public interest to do so. In Bell Telephone Co. of Pa. v. Driscoll et al., supra, the court said on this subject (p. 116) :

"Even if we were to consider that public interest can be implied as the standard for approval, that term would not be a proper standard unless further defined or limited in its meaning. To hold otherwise would be to reject the rule that the legislature may not delegate its authority to legislate since in any such delegation there is an implication that the power will be exercised in the public interest. Before any commission can decide whether a contract is contrary to public interest, it is necessary to find what is or what is not in the public interest. The power to make such determination rests with the legislature and without such declaration the commission would be without a standard or criterion. The phrase 'public interest' as used in this connection is 'a concept without ascertainable criterion.' At best the term is too vague and elastic to furnish a standard. As we have said: 'In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions,

must strictly adhere and by which they are strictly governed . . . If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity: *Schechter Poultry Corp. v. United States*, 295 U. S. 495; *Panama Refining Co. v. Ryan, supra; O'Neil v. Insurance Co.*, 166 Pa. 72': *Holgate Bros. Co. v. Bashore*, 331 Pa. 255, 260, 263, 200 A. 672."

As applied to the transfer of restaurant liquor licenses, the act, in our opinion, would be unconstitutional if it were construed as conferring discretionary powers in the Liquor Control Board or in the court of quarter sessions except as expressly provided. The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552, declares:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others . . . (3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth."

For this reason we think it proper to rule that the legislature did not intend to confer on either the Liquor Control Board, or upon the court of quarter sessions, the broad discretionary powers relied on by appellee so far as the transfer of restaurant licenses is concerned.

Whether our views on the legal questions herein discussed be valid or not, we are of the opinion that even if the board and this court have discretionary powers with respect to the transfer of liquor licenses, appellants are clearly entitled to have their application approved. We find as a fact, on the basis of the testimony, that to refuse the transfer to appellants would, under the circumstances of this case, constitute a palpable abuse of discretion.

The instant appeal must, therefore, be sustained and the proposed transfer of liquor license approved.