Commonwealth v. Bedio

*Angel & Kerchner*, for Commonwealth.

*Rowley & Smith*, for defendant.

McCREARY, P. J., April 25, 1956.—This case is before the court following the granting of defendant's petition for allowance of an appeal from summary conviction before a justice of the peace. On October 5, 1955, William G. Bott, President of the Anthony Wayne Terrace Housing Association, (hereinafter called the association) on behalf of the association, made an information against defendant charging him with violating the rules and regulations of a nonprofit corporation, adopted in pursuance to authority conferred by section 311, art. 3 of the Act of May 5, 1933, P. L. 289, 15 PS §2851-311. The alleged violation consisted in parking an automobile on a two-lane private driveway where parking had been prohibited by the association. Defendant was found guilty at the hearing before a local justice of the peace, and this appeal followed. A hearing was held before the court, and the case is now before us for disposition on defendant's motion that the charge be dismissed.

Section 311, art. 3 of the Act of May 5, 1933, P. L. 289, 15 PS §2851-311, reads as follows:

"Any nonprofit corporation maintaining buildings or grounds open to the public shall have the power to adopt, promulgate, and enforce such lawful rules and regulations as shall be needful to maintain peace and order on or in such grounds and buildings, and to secure the safety and protection of the property of the corporation. Any person violating any of the rules or regulations so adopted or promulgated shall, upon conviction thereof in a summary proceeding before a

justice of the peace, alderman, or magistrate, be sentenced to pay a fine of not more than ten dollars ($10.00), together with the costs of prosecution, and, in default of the payment of the fine and costs, to undergo imprisonment for not more than ten days."

The following relevant facts were produced at the hearing. The association was incorporated as a non-profit corporation on April 7, 1954. The purpose of the association, as set forth in paragraph 2 of the application for charter, is principally to "maintain, operate, and purchase housing on a mutual ownership or coöperative basis for its members or stockholders, . . ." Defendant is a member of the association and resides in one of the units of the housing project owned and maintained by the association. Subsequent to its incorporation, the members of the association adopted a set of approximately 51 rules and regulations "designed to define standard procedure for the internal operation of the association". These rules deal with such subjects as the board of directors, maintenance, grounds, occupancy, etc. Rule IX-1 prohibits "parking on any two-lane thoroughfares within the grounds owned by the association". It was further provided that "violation of these rules and regulations shall be cause for removal and loss of membership". At the hearing, the minute book of the association was not produced to prove these rules. Following the hearing, counsel for defendant having been satisfied the rules were properly adopted, it was agreed between counsel that in lieu of the minute book, the charter, bylaws and rules and regulations as printed by the association should be delivered to the court for use in disposing of this case. It was further made to appear at the hearing that defendant had violated the aforesaid rule IX-1. After finding defendant guilty of violating rule and regulation IX-1 adopted by the association, the justice of the peace imposed a fine of $10, in default of pay-

ment of which defendant was committed to the Beaver County Jail for 10 days.

Agreeing, as we do, with the oral argument of defendant, made after the hearing, later reduced to writing and presented to the court and, feeling that it properly analyzes, discusses and pin-points the questions of law involved, we adopt excerpts therefrom as our opinion in the case as follows:

### Questions of Law Involved

1. Is the Act of May 5, 1933, P. L. 289, art. III, sec. 311, 15 PS §2851-311, an unconstitutional delegation of the legislative power?

2. Is the association a nonprofit organization "maintaining buildings or grounds open to the public"?

3. Is rule IX-1 "needful" to maintain peace and order on the association's grounds *and* to secure the safety and protection of property owned by the association?

### I.   The Act of May 5, 1933, P. L. 289, Article III, sec. 311, is an Unconstitutional Delegation of the Legislative Power.

Section 1, art. II of the Constitution of Pennsylvania vests the legislative power of the Commonwealth in the General Assembly. This provision is fundamental to our system of representative government and any attempt by the assembly to delegate this vital and awe-inspiring power to others must be stricken down and declared void. This much is hornbook law and is not open to dispute. It is equally obvious on the other hand that the assembly may, and, in fact, must delegate to others the authority and responsibility to execute and enforce its legislative mandates. For enlightening discussions of these principles see 11 Am. Jur., Constitutional Law, p. 921, §214, et seq.; Summary of Pennsylvania Jurisprudence, Constitutional Law, Chap. II, p. 35, §23, et seq.; Weaverland Independent School Dis-

trict Case, 378 Pa. 449 (1954) ; Marshall Impeachment Case, 363 Pa. 326; Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329; Santus Unemployment Compensation Case, 177 Pa. Superior Ct. 496. These rules, as developed by our appellate courts have been stated as follows:

"Legislative power is the power 'to make, alter and repeal laws': O'Neil v. American Fire Ins. Co., 166 Pa. 72, 76. While the Legislature cannot delegate its lawmaking power, it can 'delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend': Locke's Appeal, 72 Pa. 491, 498. It may delegate 'the duty to determine whether the facts exist to which the law is itself restricted': Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260. But 'it cannot empower a fact-finding body 'to create the conditions which constitute the fact' ": Marshall Impeachment Case, supra, page 337.

" 'It is safe to assume . . . that the type of delegation of power by a legislative body which is invalid under the one Constitution is also invalid under the other, and that reliance may be placed upon . . . decisions arising under the Constitution of the United States in construing the Constitution of Pennsylvania': Holgate Bros. Co. v. Bashore, supra, 259-260. 'The Constitution as a continuously operative charter of government does not demand the impossible or the impracticable. . . . The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct. . . . These essentials are preserved when Congress (or the Legislature) has specified the basic conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective. *It is no objection* that the determination of facts and the in-

ference to be drawn from them in the light of the statutory standards and declarations of policy call for the exercise of judgment . . .': Yakus v. United States, 321 U. S. 414, 424": Marshall Impeachment Case, supra, page 338.

"While the legislature cannot delegate the power to make a law, it may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act": Belovsky v. Redevelopment Authority, supra, page 342.

In applying these rules to the case at bar, we find that the issue is whether the assembly, by enactment of section 311 of the Act of May 5, 1933, P. L. 289, delegated the power to certain nonprofit corporations enumerated therein to make a criminal law, or whether it merely imposed upon such corporations the duty of carrying out a declared legislative policy in accordance with primary standards established therein. This brings to mind immediately the following questions: (a) What is the declared legislative policy? (b) what primary standards are established? We have been unable to locate any case in this Commonwealth where this precise issue has been determined. Moreover, we have been unable to find any reported cases in Pennsylvania dealing with attempted delegation to purely private corporations. A careful consideration of the section in question and the Pennsylvania decisions show that it is undoubtedly an unconstitutional effort to delegate the law making power vested in the assembly to a private corporation.

An examination of the entire Nonprofit Corporation Law, and of section 311 in particular, shows that there is no legislative declaration of "public policy" underlying its enactment. The law was passed solely to regu-

late the formation, operation and dissolution of nonprofit corporations within the State. Nowhere does there appear a statement of the public interest to be served or of the policy necessitating its passage. Any exercise of the delegated power must be in accordance with the public policy determined by the legislature. Where, as here, there is no such expression of policy, the attempted delegation is unlimited and must fail. Thus, at the outset it is seen that one of the two pillars upon which a valid delegation of authority must rest is missing.

In addition to failing to declare any public policy when adopting the act in question, the general assembly failed to establish any definite standards and limitations to guide the recipient of the power attempted to be delegated by section 311.

The case of Bell Telephone Company of Pennsylvania v. Driscoll, 343 Pa. 109, was a bill in equity seeking to restrain defendants from enforcing section 702 of the Public Utility Law of May 28, 1937, P. L. 1053, sec. 702, requiring commission approval of all contracts between public utilities and their affiliated interests. The Pennsylvania Supreme Court, in holding that the section constituted an unconstitutional delegation of the legislative power to the commission, found that no definite standards had been established to guide the commission in approving or disapproving such contracts. It was argued by defendants that the commission was to be guided by "public interest". The court rejected this argument by holding that such a standard was too vague and indefinite and left the commission virtually unrestrained in the exercise of the delegated power. In the case at bar the assembly used the terms "peace and order" and "safety and protection" as the only possible standards to guide the user of the power. These words or terms are mere generalities which are as vague and indefinite as "public interest" was in

the Bell Telephone case, supra, and which, in effect, leave the association as unrestrained in this case as was the commission in the former case.

Similarly, in Holgate Bros. Co., v. Bashore, 331 Pa. 255, where the 44 hour work week law was held unconstitutional, the court found that standards of "unnecessary hardship" or "failure to protect public health and welfare" were too vague and indefinite to be used as proper restrictions on the use of the delegated power. One of the leading Pennsylvania cases on this subject is Wilson v. Philadelphia School District, 328 Pa. 225. In that case the assembly attempted to delegate to defendant school board (which was appointive and *not* elective) the power to tax. The rate of the tax was to be determined according to a formula provided by the assembly. One item of this formula, however, could be determined by the board and its discretion in fixing that number was uncontrolled. Therefore, the court held that the attempted delegation was void as an unconstitutional delegation of the legislative power to tax. In so doing, the court said (pp 237, 238) :

"Delegation to a fact-finding body of the power to do something that is in itself circumscribed, after facts are found, is not the delegation of a legislative function. *But where the delegation to a fact-finding body empowers it to create the conditions which constitute the fact, this is legislative.* Here the determinative fact, the most material element entering into the tax, *may be created without restraint* by the Board of Education. This determination can be nothing else than legislative." (Italics supplied.)

The power attempted to be delegated by section 311 in the present case is for all practical intents and purposes unrestrained and unlimited. Under it, the prosecuting association could conceivably impose antismoke regulations against residents, business and industry

in Baden and surrounding localities (for protection of corporate property), regulate business and social activities in the neighborhood (to maintain peace and order), and similar other clearly legislative functions. In this case, the legislature has not passed a law and provided for its execution within certain well defined standards and according to an established public policy upon a finding by the corporation or association that certain facts (prescribed by the legislature) exist. Rather, the legislature has attempted to delegate the unrestrained power to make law, and criminal law at that, a function which by our Constitution has been vested exclusively in the legislature. The question boils down to this: Does the legislature have the authority to delegate to a nonprofit corporation formed for the benefit of its members the power to make certain conduct, which may endanger its property or peace and order on its grounds, subject to criminal prosecution? If it does, then it follows logically that the power may be delegated to any corporation whether profit or nonprofit, or to any association, or, in fact, to any individual who owns or maintains property where customers or friends may on occasion be invited. This being the case, any property owner may establish and set up his own criminal code for the protection of his property and the peace of his family. The result, of course, would be chaos. Nor is the example absurd, for the association in this case is in no different circumstances than thousands of property owners in this county and Commonwealth.

### II. The Association Is Not a Corporation Maintaining Buildings or Grounds "Open to the Public"

Even if section 311 of the corporation law is constitutional, still the appeal should be sustained for the following reason: Section 311 in effect is a criminal

statute. It grants to the donee of the power the right to make certain acts punishable by criminal proceedings. Therefore it should be strictly construed: Act of May 28, 1937, P. L. 1019, art. IV, sec. 58, 46 PS §558 (1). An examination of section 311 shows that it does not apply to all nonprofit corporation, but *only* to such corporations which maintain buildings or grounds open to the public. Even the Commonwealth and the prosecutor agree with this proposition, for any contrary interpretation would require a complete disregard of those words in the section. Therefore, we come to the question of whether the association maintains buildings or grounds open to the public. The main function of the association and the purpose for which it was incorporated is to maintain housing for its members. These housing units are certainly not "open to the public". The principal interest of the officers and members is to obtain adequate and pleasant private housing for themselves at the least possible expense. It cannot be said that the association purchased the project in question for the main purpose of maintaining it open to the public. Any use of the grounds for play by neighborhood children or of a central hall by certain civic groups after obtaining permission from the proper officers is merely incidental to the main function and purpose of the association and is not sufficient to bring it within the scope of section 311. The words "open to the public" as used here mean grounds or buildings where the primary purpose and principal function is used by the public; those places where the public is invited regularly and without distinction and where prior permission is not required. Such places are public libraries, public museums, little league ball parks, civic auditoriums, public parks, hospitals, etc. The reason for being of each of these places, and others like them, is to serve, edu-

cate or amuse the "public" generally. This is not true of the association in this case. In construing section 311 strictly, the delegated power should not be extended to any group other than those clearly within the meaning of the section. If there is any doubt as to whether the association qualifies, that doubt should be resolved against the association. We believe the legislature intended to give only to those corporations, organized for the laudable purpose of serving the public in some manner, the right to adopt rules for the protection of the members of the public so using such service and for the further protection of the property used in such service. The legislature did not intend to confer upon a corporation, organized for the benefit of its own members, the right to adopt a "criminal code" which would affect its members and members of the community. For this reason, also, defendant's appeal should be sustained.

*III. Rule IX-1 Is Not "Needful" to Maintain Peace and Order on the Association's Grounds and to Secure the Safety and Protection of Its Property.*

There is a third reason why this appeal should be sustained. Section 311 requires that any rule so adopted be "needful to maintain peace and order and to secure the safety and protection of the corporate property". Since, as we have seen, this statute must be strictly construed, it is necessary that the rule adopted by the association comply with these requirements. Assuming that the section is constitutional, moreover, it must be "needful" or necessary to accomplish these objectives. The rule in question prohibits parking on two lane driveways owned by the association. Certainly such a rule is not "needful" to secure the safety and protection of the *property* of the association which, so far as this record shows, is real estate. Fire and smoke regulations, regulations concerning walking on

grassy areas, wiring regulations, and the like, have some relation to protection and safety of real estate, but the prohibition of parking in certain areas has no logical or reasonable connection (let alone "needful"), with the purpose of securing the safety and protection of the corporate realty. Such a rule may be *convenient* for movement of traffic, but certainly in no way contributes to a more secure situation for the safety and protection of the ground and buildings in question. Nor is a parking rule needful to maintain peace and order. The record shows that even when an auto is parked in violation of the rule, there is still ample room to pass it and remain on the driveway. There may be times when one motorist must stop to let another, going in the opposite direction, pass the parked car first, but elimination of the parked car is, at best, a convenience to those using the driveway. Their removal does not make peaceful an otherwise turbulent situation, for the situation is not turbulent but, at most, inconvenient. For these reasons the appeal should be sustained.

However, in this connection we wish to make two further observations.

1. The association has adopted, apparently, approximately 51 rules. Certainly they do not claim that a violation of any one of the 51 is punishable by summary conviction. For example, are the members of the audit committee liable to summary conviction if they fail to report to the members twice annually (Rule VI-2), or is a member subject to summary conviction if his request for maintenance is not made to the office (Rule IV-3)? The answers are obvious. Since all 51 were not adopted pursuant to section 311, which were and which were not; and further, who shall decide. The rules themselves state that violation is cause for loss of membership. This was the sole penalty in mind

when the membership adopted these rules, and that does not now give authority to the directors to proceed under section 311 at their own whim and fancy. In other words, any rule, intended to be adopted under section 311, should so state and set forth the penalty provided in section 311 for violation of the rule.

2. The foregoing discussion under this portion of the opinion helps to point up and illuminate the vagueness and uncertainty of these standards referred to in part one of the argument, and further illustrates the necessity of declaring section 311 unconstitutional.

Under the provisions of section 1, art. II of the Constitution of Pennsylvania, "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives". The people of Pennsylvania never conferred on the General Assembly the authority to delegate legislative power to a private corporation, and certainly never gave to that body the power to delegate to a private corporation the right to adopt a "criminal code".

The association is not without remedy to cure the evil complained about. It may, in law or equity, enforce its rules and regulations by pursuing the remedy provided by those rules. Those rules provide that "violation of these rules and regulations shall be cause for removal and loss of membership", not that they shall be grounds for criminal proceedings.

The appeal of George Bedio must be sustained.

Entertaining these views, we make the following

### Order

Now, April 25, 1956, after hearing, the appeal of George Bedio is sustained, defendant is found to be not guilty, and it is ordered that he be discharged from his recognizance at the cost of the real prosecutor, Anthony Wayne Terrace Housing Association, Inc.