90
e 31 SC

# In re division of Gettysburg into wards.

In a proceeding under the Act of May 14th 1874, to divide a borough into wards, it is not necessary for the petitioners to ask for division into a definite number of wards and suggest the boundaries thereof. The proper practice is to ask for a division, leaving the details as to the number of wards and the boundaries thereof, to the judgment of the commissioners under the supervision of the court.

May 21st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and WOODWARD, JJ., absent.

Certiorari to the Court of Quarter Sessions of *Adams county*: Of May Term 1879, No. 74.

On the 30th of August 1877, the requisite number of freeholders, resident in the borough of Gettysburg, presented their petition to the Court of Quarter Sessions, setting forth, "that it would promote the interest of your petitioners, and the taxpayers

[In re division of Gettysburg.]

generally of said borough, to have the said borough divided into wards." On the 1st of September 1877, the court appointed three commissioners, and issued an order to them "to inquire into the propriety of granting the prayer of the petitioners."

On the 12th of November 1877, the commissioners made report to the court, that after having given legal notice, &c., "they proceeded to inquire into the propriety of granting the prayer of the said petition, and that in the opinion of the said commissioners it would be proper to grant the prayer of the said petitioners, and the said commissioners hereby recommend and report that the said borough shall be divided into three wards, and the lines and boundaries of which, shall be as follows." The report then set out by metes and bounds the lines of the proposed wards, but was not accompanied with a draft or plot. On presentation of the report, November 12th 1877, the court confirmed it *nisi.*

Exceptions were filed thereto on the 28th of January 1878, for the following reasons:

1. That the proceeding is defective in that the petition does not designate the number of wards proposed nor their boundaries. 2. That no draft was returned. 3. That the order of court was to "inquire into the propriety of granting the prayer of the petitioners." 4. That the petition does not ask for any order for any definite purpose.

On the hearing of said exceptions, the court, on the 12th of April 1878, recommitted the report to the commissioners, to submit a plot or draft with their report, On the 18th of April 1878, the commissioners submitted an amended report, in substance the same as the first, but accompanied with a plot or draft of the wards, which was, the same day, confirmed *nisi* by the court.

To this amended report exceptions were again filed August 17th 1878, the same in substance as the first exceptions, leaving out the second in reference to a plot or draft, and inserting in lieu thereof, that the draft or plot of the boundaries of the borough of Gettysburg was not correct.

On the 16th of August 1878, without any order of court, or authority, and after the duties of the commissioners had ceased, and their order had been expended and returned, they filed, in the office of the clerk of the Court of Quarter Sessions, a supplemental report, with a plot changing the boundaries of the wards proposed.

On the 23d of December 1878, the court made the following order and decree, endorsed on the original report: "Exceptions dismissed and report confirmed absolute."

To this order and decree of the court this certiorari was issued December 30th 1878.

*J. A. Kitzmiller, David Wills* and *R. G. McCreary,* for plain

[In re division of Gettysburg.]

tiffs in error.—The petition is too indefinite. The tax-payers and citizens have a right to know from the record what the commissioners are to inquire into. The Act of the 15th of April 1834, Pamph. L. 539, relating to the division of townships, is the same as the Act of 1834 relating to boroughs, and contemplates that the proposed division should be set out in the petition: Green Township, 9 W. & S. 22; Sewickley District, 9 Casey 297; Harrison Township, 5 Barr 447; Wetmore Township, 18 P. F. Smith 340.

The Act of Assembly makes it imperative on the commissioners to accompany their report with a plot or draft of the proposed wards. The court referred the report back to the commissioners for amendment in this particular, and the commissioners made an amended report, accompanying it with a draft, but the court did not make the final order on this amended report.

*J. C. Neely, W. A. Duncan* and *D. M. Wilson,* for defendants in error.—There is no necessity, and there would be no propriety, in having the number of wards and their boundaries designated in the petition. This is a matter left entirely to the Court of Quarter Sessions, through their sworn officers, the commissioners.

This proceeding is analogous to that provided for by the Act of April 15th 1834, for the erection of new townships, &c. The same language is used as to the duties of the commissioners. It is held not to be essential in such cases that the lines of the new township should be designated in the petition. See Macungie Township, 3 Rawle 459; Harrison Township, 5 Barr 447; Limestone Township, 1 Jones 270; Bethel Township, 1 Barr 97; Conneaut Township, 6 Pitts. Law Jour. 121.

Mr. Justice STERRETT delivered the opinion of the court, June 23d 1879.

The first assignment of error presents the question, whether, in a proceeding to divide a borough into wards, it is necessary for the petitioners to ask for division into a definite number of wards and suggest the boundaries thereof. The answer to this question must depend on the provisions of the statute by which alone the proceeding is authorized and regulated.

The Act of May 14th 1874, Pamph. L. 159, prescribing "the manner by which the courts may divide boroughs into wards," empowers the several courts of Quarter Sessions within their respective counties to divide boroughs into wards; to erect new wards out of parts of two or more adjoining wards; to divide any ward already erected into two or more wards; to alter the lines of any two or more adjoining wards, so as to suit the convenience of the inhabitants thereof; and, for the purpose of effecting either of these objects, to cause the lines or boundaries to be ascertained and established. By the supplement of March 24th 1877, Pamph. L. 47,

[In re division of Gettysburg.]

the further power is conferred, of "erecting two or more wards, or parts of two or more wards, into one ward."

The second section of the original act provides that upon application by petition of at least twenty freeholders, resident in the borough or ward, for any of the purposes above specified, the "court shall appoint three impartial men to inquire into the propriety of granting the prayer of the petition. And it shall be the duty of the commissioners so appointed, or any two of them, to make a plot or draft of the borough or wards proposed to be divided, of the proposed new wards, and the division lines proposed to be made thereon, or of the lines proposed to be ascertained and established, as the case may be, if the same cannot be fully designated by natural lines and boundaries; all of which they or any two of them shall report to the next Court of Quarter Sessions, together with their opinion of the same."

The petitioners in this case represented that their interest and that of citizens and tax-payers of the borough would be promoted by a division thereof into wards, and prayed the court to appoint three impartial men to inquire into the propriety of making a division, but they did not propose any specific number of wards into which it should be divided, nor did they make any suggestion as to the boundaries thereof. It is contended that the omission to do this rendered the petition fatally defective. We do not think so. While the course contended for by the plaintiff in error, may perhaps be pursued without vitiating the proceedings, there is nothing in the act requiring it to be done. On the contrary we think the proper practice, as indicated by the act, is to ask for a division, as was done in the present case, leaving the details as to the number of wards and the boundaries thereof to the judgment of the commissioners, under the supervision of the court. After the parties interested have been duly notified, the first duty of the commissioners is to inquire into the propriety of making a division. If they or any two of them are of opinion that it is proper, it is made their duty to prepare a plot or draft of the borough, indicating thereon the wards into which, in their judgment, it should be divided and report the same with their opinion to the court. The order issued to the commissioners in this case conforms to this view of the act. It directs notice, inquiry into the propriety of division, the making of a plot of the borough with "lines and boundaries of the wards, if any, which they may see fit to erect and designate, if the same cannot be fully designated by natural lines and boundaries," &c. An opportunity is thus afforded to all parties interested to appear before the commissioners and be heard for or against division, as well as in relation to the number of wards and the boundary lines thereof, to be ascertained and established. In this way the commissioners are enabled to reach a result, on all the questions involved, that will be more generally satisfactory to the

[In re division of Gettysburg.]

people of the borough, than if the details of their work were suggested by the petitioners.　After the report has been presented, exceptions thereto may be filed and disposed of on evidence, as the court shall deem just; with the further right to a review, if, in the opinion of the court, it may be necessary to secure a fair adjudication of the matter.　The most ample provision is thus made for obtaining the views and consulting the wishes of all concerned, and in the end reaching a just and proper conclusion.

The action of the court in recommitting the report to the commissioners was entirely proper.　They had inadvertently omitted to attach the required plot or draft, and no injury could result to any one from allowing them to supply the omission.

There is no merit in the exception that the final confirmation was endorsed on the first report.　The amended as well as the supplemental report and corrected plot are to be considered as forming a part of the first and only report of the commissioners, which, as thus amended and corrected, was approved by the court.　There is no such irregularity as calls for setting aside the proceedings.

Proceedings affirmed.