Nester Appeal.

Argued March 24, 1958. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. HIRT, J., absent).

314

*Victor J. Roberts,* with him *High, Swartz, Childs & Roberts,* for appellant.

*Malcolm Campbell,* with him *C. Edmund Wells,* for appellee.

OPINION BY WOODSIDE, J., September 11, 1958:

A petition was presented to the Court of Quarter Sessions of Montgomery County by the requisite number of electors of the Borough of Pottstown, alleging that the borough's twenty member council is the largest legislative body in the Commonwealth excepting only the General Assembly, and praying that under the Act of May 4, 1927, P. L. 519, §601 et seq., as amended by The Borough Code of July 10, 1947, P. L. 1621 and subsequent acts, 53 PS §45601 et seq., the existing ten wards be consolidated.

Raymond F. Nester, a citizen and resident of the borough, filed a petition under the Act of March 5, 1925, P. L. 23 (12 PS §672), asking that the electors' petition be dismissed for lack of jurisdiction on the ground that the statutory provision authorizing the court to consolidate the borough wards is unconstitutional.

The court below, in a well considered opinion by Judge GERBER, refused to dismiss the electors' petition. Nester, thereupon, appealed to this Court.

The provisions of The Borough Code under which the petition was presented are as follows: "The court of quarter sessions, upon petition, may divide boroughs into wards, erect new wards out of two or more adjoining wards or parts thereof, consolidate two or more wards into one ward, divide any ward already erected into two or more wards, alter the lines of any two or more adjoining wards, cause the lines or boundaries of wards to be ascertained and established, or abolish all wards." Section 601, 53 PS §45601.

"The petition shall be presented by the council of the borough pursuant to a resolution of the council, or by at least five per centum of the registered electors of the borough, or in case of a proposal to divide the borough into wards or to abolish all wards, or by at least five per centum of the registered electors of the ward or wards whose limits it is proposed to change, as the case may be. Upon its presentation, the court shall appoint three impartial persons as commissioners to inquire into the propriety of granting the prayer in the petition. The commissioners, or any two of them, shall make a report to the court, within sixty days after their appointment and shall accompany it with a plot, showing the boundaries of the proposed wards of the borough, or the wards before and after the proposed change, as the case may be, whenever the same cannot be fully designated by natural lines." Section 602, 53 PS §45602.

The question we are asked to decide is whether the above provisions of The Borough Code authorizing the court of quarter sessions to "divide boroughs into wards . . . or abolish all wards" is a delegation of legislative power in violation of Article 2, Section 1 of the Pennsylvania Constitution.

It appears to be the desire of the parties that we pass over procedural and other questions in order to

deal exclusively with the above issue. We shall do so in this case. See *Price Appeal,* 186 Pa. Superior Ct. 33, 140 A. 2d 369 (1958).

Article 2, §1 of the Pennsylvania Constitution provides: "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives."

This provision is found in identical language as Article 1, §1 of the constitutions of both 1790 and 1838.

The power to divide the state into political subdivisions is a legislative power. The Constitution prohibits the vesting of legislative power in the judiciary, as well as in the executive. The legislature has no right to delegate, or the judiciary to accept, a legislative power which is vested by the Constitution in the General Assembly. *Commonwealth v. Franklin,* 172 Pa. Superior Ct. 152, 183, 184, 92 A. 2d 272 (1952).

The legal test to be applied to determine whether there has been an unconstitutional delegation of legislative power has been well stated. Justice AGNEW said in *Locke's Appeal,* 72 Pa. 491, 498 (1872) : "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." The above is probably the most quoted judicial statement originated by a Pennsylvania judge.

The test is settled, but the difficulty of applying it is demonstrated by the number of vigorous dissents to be found in the cases where its application was required, and by the apparent inconsistencies which can be found by examining the numerous cases dealing with the problem.

The statute here questioned is the amendment made to section 601, supra, of The Borough Code by the Act of July 17, 1957, P. L. 987, authorizing the courts of

quarter session to "abolish all wards," in a borough. Previously the section had given the courts power to erect and change wards. This amendment, however, does not alter the basic question before us.

The courts of quarter sessions have dealt with the erection and division of political subdivisions from the earliest days of the Commonwealth.

The Act of March 24, 1803, P. L. 30, authorizes the courts of quarter sessions to "lay off, alter and divide townships." In the official report of the statute printed in 1810 a note states: "The powers given by this act appear to have been long previous thereto exercised by the Courts of Quarter Sessions."

That act provided for the appointment of three impartial men to inquire into the propriety of granting the prayer of any petition to divide any township or to alter the lines of any two or more adjoining townships. The procedure therein set forth is very similar to that required by The Borough Code, under which the petition was filed in the case before us. See also the Act of April 15, 1834, P. L. 537, §13.

By the Act of May 14, 1874, P. L. 159 (the 96th act passed under the present Constitution) courts of quarter sessions were authorized "to divide boroughs into wards, to erect new wards out of parts of two or more adjoining wards, to divide any ward already created in two or more wards, to alter the lines of any two or more adjoining wards, so as to suit the convenience of the inhabitants thereof . . ."

Acts authorizing the courts of quarter sessions to deal with political subdivision boundaries have been before the Supreme Court innumerable times during the past 150 years. For a few of the cases see *Wyalusing Township Case*, 2 S. & R. 401 (1816) ; *Case of Maccungie Township*, 3 Rawle 458, 465 (1832) ; *In*

re: Bethel Township, 1 Pa. 97 (1845) ; In re: Division of Plum Township, 83 Pa. 73 (1876) ; In re: Division of Gettysburg, 90 Pa. 355 (1879) ; Brown v. Fowzer, 114 Pa. 446, 6 A. 706 (1886) ; Avalon Borough, 31 Pa. Superior Ct. 167, 170 (1906) ; Price Appeal, supra, 186 Pa. Superior Ct. 33, 140 A. 2d 369 (1958). All of these cases recognized without question, the authority of the courts of quarter session to inquire into the "propriety" of changing the geographical area of various political subdivisions.

The constitutionality of the aforesaid Act of 1874 authorizing the courts of quarter session to deal with the problem of dividing boroughs into wards was raised in Summit Hill Borough, 240 Pa. 396, 399, 87 A. 857 (1913), although it does not appear that any particular reference was made to Art. 2, §1. The Court there said: "It seems quite late for the learned counsel for appellant to raise the question of the constitutionality of the Acts of 1874 and 1877. So far as we are aware these acts have not been so questioned before and they have been recognized as valid laws ever since their passage.

"The legislature having committed the subject matter of this case to the Courts of Quarter Sessions, the appellate courts ought not to be astute in finding reasons for the reversal of a decree which relates to the practical government and management of a borough, where it appears that said decree was reached and made with due care and a manifest desire to subserve the interests and convenience of the inhabitants of the Borough of Summit Hill."

There is no substantial difference between the provisions of the Act of 1874 and those which replaced them in The Borough Code and are now before us. If the provisions of the Act of 1874 were constitutional, then the relative provisions of The Borough Code are

constitutional, for there is no differentiating characteristic.

It is presumed that all existing reasons for declaring an act unconstitutional were considered and held insufficient when a court deals directly with the constitutionality of an act. *Keator v. Lackawanna County*, 292 Pa. 269, 272, 141 A. 37 (1928) ; *Swatara Township School District's Appeal*, 1 Pa. Superior Ct. 502 (1896). The Borough Code and the Act of 1874 are not the same act, but they represented a continuing authority of the courts of quarter sessions to deal with the geographic area of political subdivisions.

A list of some of the earlier cases in which the courts have declared constitutional, acts which authorized administrative officers, boards and commissions to determine some fact or state of things upon which the law makes, or intends to make its own action depend, can be found in *Gima v. The Hudson Coal Co.*, 106 Pa. Superior Ct. 288, 299, 300, 161 A. 903 (1932), and of the more recent cases in *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 343, 54 A. 2d 277 (1947). See also *Rohrer v. Milk Control Board*, 322 Pa. 257, 186 A. 336 (1936) in which the Milk Control Act was held constitutional, and *Santus Unemployment Compensation Case*, 177 Pa. Superior Ct. 496, 110 A. 2d 874 (1955).

Where the legislature has delegated powers to administrative officers, boards and commissions, which are a part of the executive branch of the government, the courts have required the legislature to surround such powers with definite standards, policies and limitations to which such administrative officers, boards and commissions must strictly adhere, and by which they are strictly governed. *Holgate Bros. Co. v. Bashore*, 331 Pa. 255, 260, 200 A. 672 (1938).

Although, as we have noted, the Constitution prohibits the vesting of legislative power in the judiciary, as well as in the executive branch of the government, the principle of the separation of powers applies with least force and effect to the judiciary, for when courts are said to exercise discretion the reference is always to legal discretion within, not without, the bounds of the law. *Commonwealth v. Franklin,* supra, 172 Pa. Superior Ct. 152, 183, 92 A. 2d 272 (1952).

It is to be noted that in the Borough Code with which we are dealing, as well as in the similar acts starting with the Act of 1803, the legislature has outlined the procedure to be followed by the courts in dealing with the division of political subdivisions. The procedure to be followed is specific, but the standards to govern the division of the geographic area have been stated in more general terms in all these acts. The provisions relating to the standard refer only to "the *propriety* of granting the prayer in the petition" or "so as to suit the convenience of the inhabitants thereof."

In *Baldwin Township's Annexation,* 305 Pa. 490, 158 A. 272 (1931), and in *Weaverland Independent School District Case,* 378 Pa. 449, 106 A. 2d 812 (1954) the Supreme Court declared constitutional the statute directing the Superintendent of Public Instruction to pass upon the merit of school consolidations "from an educational standpoint." The legislature there, too, stated in rather general language the standards to which the Superintendent was to adhere.

For over a century prior to the passage of The Borough Code the courts have, in numerous decisions, dealt with not only the procedure to be followed, but also the standards to be applied. These standards do not represent the discretion of the judges, but the law of the Commonwealth. The courts' actions constitute

the law governing the method of procedure and guiding the courts of quarter sessions in determining the facts to be applied under the above statutory provisions in The Borough Code. Under these circumstances it is not necessary for the legislature to surround the court with standards of the same detail as is necessary under the circumstances dealt with in such cases as *Holgate Bros. Co. v. Bashore,* supra, 331 Pa. 255, 200 A. 672 (1938) and *O'Neil v. American Fire Insurance Co.,* 166 Pa. 72, 30 A. 943 (1895).

An act of the legislature should not be declared unconstitutional unless "it violates the Constitution clearly, palpably plainly; and in such manner as to leave no doubt or hesitation in our minds." *L. J. W. Realty Corp. v. Phila.,* 390 Pa. 197, 205, 134 A. 2d 878, 883 (1957).

The appellant has failed to discharge the heavy burden placed upon him to overcome this strong presumption of constitutionality.

The order is affirmed.