## Edwardsville Borough Wards

J. *Earl Langan*, for petitioners.

*Anthony B. Panaway* and *John J. Kozloski*, for exceptants.

FLANNERY, J., July 20, 1959.—This proceeding to abolish all the wards in the Borough of Edwardsville was instituted under article VI, sec. 601, et seq., of The General Borough Act of May 4, 1927, P. L. 519, as amended by The Borough Code of July 10, 1947, P. L. 1621, as amended, 53 PS §45601 et seq.

The pertinent provisions of the Borough Code are as follows:

"The Court of Quarter Sessions, upon petition, may divide boroughs into wards, erect new wards out of two or more adjoining wards or parts thereof, consolidate two or more wards into one ward, divide any ward already erected into two or more wards, alter the lines of any two or more adjoining wards, cause the lines or boundaries of wards to be ascertained and established, or abolish all wards": Section 601, 53 PS §45601, as amended.

"The petition shall be presented . . . by at least five per centum of the registered electors of the borough, or in case of a proposal to . . . abolish all wards. . . . Upon its presentation, the court shall appoint three impartial persons as commissioners to inquire into the propriety of granting the prayer in the petition. The commissioners, or any two of them, shall make a report to the court, within sixty days after their appointment. . . .": Section 602, 53 PS §45602, as amended.

On October 31, 1958, in accordance with the provisions of the statute, a petition, signed by the requisite number of registered electors of the Borough of Edwardsville, was filed with this court praying that all the wards in the borough be abolished. Upon its presentation, three commissioners were appointed "to inquire into the propriety" of granting the prayer.

After their appointment the commissioners held three public hearings, at which time testimony was taken of a great number of residents of the borough. This testimony was transcribed and has been filed as part of the record. It indicated that the residents were overwhelmingly against the abolition of the wards, i.e., approximately 80 percent against and 20 percent in favor.

In addition to the oral testimony, the commissioners considered petitions presented to them which were signed by several hundred residents of the borough, all of whom were opposed to abolishing the ward lines. Also considered were certain academic publications obtained by the commissioners which pertain to the relative advantages and disadvantages of wards as the structure of municipal governments.

On the basis of the record so constituted, the commissioners on February 20, 1959, filed a unanimous report recommending that all the ward lines in the borough be abolished. The only reason given to support the

recommendation was that ". . . It is the opinion of this commission that the affirmation of this recommendation will suit the convenience of the inhabitants of the Borough of Edwardsville, Pennsylvania, and the interests of the taxpayers, property owners and residents will best be served accordingly."

After the confirmation nisi of the report, certain of the resident taxpayers of the borough filed exceptions. Only four were pursued at the argument. They are as follows:

"(1) The report of the Commissioners is not in accordance with the expressed desire of the majority of witnesses appearing before the said Commissioners at Hearings held by them on the 1st, 8th and 15th days of December, 1958.

"(2) The Report of the Commissioners is contrary to the expressed desires of citizen taxpayers and resident voters of the Borough of Edwardsville, Pa., who filed Petitions opposing the abolishment of Wards in the Borough of Edwardsville, with the said Commissioners.

"(3) The Report of the Commissioners disregards the desires and convenience and disrupts the practical mode of government of the majority of the inhabitants of the Borough of Edwardsville. . . .

"(5) The Report of the Commissioners would elimiate a just and proportionate representation of the citizens of the Borough of Edwardsville in their manner of government."

These exceptions are before us for disposition.

In substance, the first three exceptions attack the report of the commissioners because it is contrary to the expressed desires of a majority of the borough residents. We shall consider these exceptions together.

At first blush, it might appear that the code provides no standard to govern the court or the commissioners appointed by it in determining the propriety

of abolishing all the wards in a borough. But this is not so. As was stated in a recent opinion of the Superior Court in a case which arose under the identical provisions of the Borough Code which are before us:

"There is no substantial difference between the provisions of the Act of 1874 and those which replaced them in The Borough Code and are now before us. . . .

". . . The procedure to be followed is specific, but the standards to govern the division of the geographic area have been stated in more general terms in all these acts. The provisions relating to the standard refer only to 'the propriety of granting the prayer in the petition' or 'so as to suit the convenience of the inhabitants thereof.'. . .

"For over a century prior to the passage of The Borough Code the courts have, in numerous decisions, dealt with not only the procedure to be followed, but also the standards to be applied. These standards do not represent the discretion of the judges, but the law of the Commonwealth. The courts' actions constitute the law governing the method of procedure and guiding the courts of quarter sessions in determining the facts to be applied. . . . Under these circumstances it is not necessary for the legislature to surround the court with standards of the same detail as is necessary under the circumstances dealt with in such cases as Holgate Bros. Co. v. Bashore, supra, 331 Pa. 255, 200 A. 672 (1938), and O'Neil v. American Fire Insurance Co., 166 Pa. 72, 30 A. 943 (1895)": Nester Appeal, 187 Pa. Superior Ct. 313, at pages 318-21.

On this basis then we must proceed to determine whether the commissioners' recommendation herein, in approving the abolition of all wards in the face of the opposition of a vast majority of interested residents, conflicts with the standards set up in prior judicial pronouncements under the present code or 'the other similar statutes previously mentioned.

The decisions make it clear that, to be sustained, the record must show that the change suits the convenience of the inhabitants of the borough: Avalon Borough, 31 Pa. Superior Ct. 167; Brown v. Fowzer, 114 Pa. 446. This alone would seem to govern the situation here. The interested inhabitants of the Borough of Edwardsville have clearly stated their preference in favor of the status quo. In our opinion such a decisive community feeling must be given great weight in determining whether or not a petition for the abolition of the ward lines should be granted. Moreover, when the record contains virtually nothing else upon which to support a recommendation, it is our view that we cannot disregard, nor can we permit the commissioners to disregard, the wishes of the inhabitants of the borough.

Even without the assistance of the cited precedents, it seems elementary that, under our system of government, the will of the majority should be respected where such is permissible under existing statutes. The statute requires that the record support the propriety of granting the prayer of the petition. But we cannot agree with the commissioners that it does so when in substance the only evidence adduced was the overwhelming opposition of the majority of the residents of the borough.

Accordingly, we shall sustain the first three exceptions filed.

The fourth exception, viz., the report "would eliminate a just and proportionate representation of the citizens of the Borough in their manner of government," is more general in its terms but no less compelling. Too often groups occupying local or less populous areas are excluded from representation in government and their localities ignored in the distribution of municipal services. This is less likely to occur with

ward representation. True, the report here is silent as to this and the matter may appear academic only, but the exceptants are pointing to just such a situation in the fourth exception. And in view of the record it would appear that the vast majority of the citizens of Edwardsville share the same view.

We believe this is sufficient and, accordingly, we sustain this exception also.

Thus on the foregoing bases we must reject the report of the commissioners and dismiss the petition.

Wherefore, the exceptions are sustained and the petition to abolish the ward lines of the Borough of Edwardsville is dismissed.

### Dissenting Opinion

APONICK, P. J.—I vigorously dissent from the decision of the majority of the court in this matter. This dissent is based both on the law and the facts.

The powers of the court upon presentation of the report of the commissioners are set forth in article VI, sec. 603, of The General Borough Act of 1927, as amended by The Borough Code of 1947, as amended, 53 PS §45603. That section reads as follows:

"Upon its presentation, the court shall confirm the report nisi, which confirmation shall become absolute unless exceptions are filed thereto, and shall direct that notice of the filing of the report shall be given by publication once in a newspaper of general circulation, stating that exceptions may be filed to such report within thirty days after the same was filed. The court shall confirm the report absolutely if no exceptions are filed or if it dismisses the exceptions. The court may remand the report to the commissioners for a review, if in its opinion a better adjudication may thereby be secured."

Under that section there are only two courses open to the court, (1) to dismiss the exceptions and confirm

the report absolutely or (2) remand the report to the commissioners for review "if in its opinion a better adjudication may thereby be secured." There is no provision for a dismissal of the petition. Therefore, the majority, by its decision, has clothed itself with powers not granted by the statute.

The majority rely upon Nester Appeal, 187 Pa. Superior Ct. 313, as giving it the power to dismiss the petition. There is nothing in that case which grants such authority. The only question before the court in that case was the constitutionality of the statute. Whatever was said in the opinion must be read with that thought in mind. A glance at the history of this legislation makes that clear.

The Act of May 14, 1874, P. L. 159, sec. 1, gave the court jurisdiction to modify ward lines, "so as to suit the convenience of the inhabitants thereof." The act further provided in section 3, that, after the commissioners had filed their report and exceptions had been filed thereto, the exceptions "shall be disposed of on evidence, as said court shall deem just."

This act was repealed by the Act of May 14, 1915, P. L. 312. Provision was made in chapter III, art. III, of section 3, of that act for modifying ward lines. The clause providing that the change should be for the "convenience of the inhabitants thereof" was omitted. The powers of the court after the filing of the report of the commissioners were as follows:

"The court may grant a review, if a better adjudication may thereby be secured, upon a petition presented before the third day of such succeeding term."

This act was revised and amended by The General Borough Act of May 14, 1927, P. L. 519, wherein the provisions of the Act of 1915 relating to this subject remained unchanged.

In 1947, the Borough Code was again revised and amended: The Borough Code of July 10, 1947, P. L.

1621. The provision relating to "convenience" was again omitted, and the powers of the court upon the filing of the report were changed to read as set forth in the quotation at the beginning of this opinion.

From this, it would seem that when the Superior Court stated, "There is no substantial difference between the provisions of the Act of 1874 and those which replace them in the Borough Code," (Nester Appeal, supra), what the court intended to say was that there was no change as far as constitutionality was concerned, as that was the only question before it. Obviously, there was a change in the procedure. Therefore, I do not think that the portions of that opinion which have been quoted by the majority have any application to this question now before us.

The majority opinion states:

"The decisions make it clear that, to be sustained, the record must show that the change suits the convenience of the inhabitants of the Borough: Avalon Borough, 31 Pa. Superior Ct. 167; Brown v. Fowzer, 114 Pa. 446."

That statement completely overlooks the fact that the provision regarding "convenience" was removed from the law by the Act of 1915 and was not returned by either the amendment of 1927 nor 1947.

The cases cited are not in point. Avalon Borough, 31 Pa. Superior Ct. 167, was decided in 1906, before the Borough Code of 1915 and, therefore, the law did contain that provision. Brown v. Fowzer, 114 Pa. 446, is an old case in which the petition was dismissed for procedural reasons only and not on the merits. The question before us was not discussed.

It is unfortunate that the statute is not more specific as to the powers of the court and does not contain any guide for it or for the commissioners. However, that is a matter solely for the legislature. We must take

the statute as we find it. We cannot rewrite the statute: Halko v. Foster Township School District, 374 Pa. 269, 272; Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 644.

The opinion of the majority is as glaring an example of judicial legislation as it would be possible to find. It has often been said that "hard cases make bad law" and this is one. The majority of the court are convinced that the best interests of the citizens of Edwardsville lies in the retention of the present ward lines. Therefore, without any authority, they have overthrown the report of the commissioners who were appointed by the court for the very purpose of considering that question. The statute (section 602, 53 PS §45602) provides that the commissioners shall be appointed "to inquire into the propriety of granting the prayer of the petition." Having done so, and having decided that there is merit in the petition, their decision is binding on the court.

In my opinion, the majority decision is equally erroneous on the facts in this case. Great stress is laid on numbers. However, this is not a referendum nor a contest to determine which side can produce the greatest number or the most voluble advocates of its position. In the trial of cases, the number of witnesses on either side is never controlling. It is the credibility of the witnesses which guides the fact finding body to a conclusion: O'Farrell v. Mawson, 320 Pa. 316, 320; Clearfield v. Driver Salesmen's Union, 160 Pa. Superior Ct. 54, 58.

The arguments and reasoning of those who presented themselves at the hearing and the motives behind their position are important to consider. The leaders of the opposition were the seven elected councilmen and their relatives and employes. It is perfectly understandable why a councilman who can perpetuate tenure in office by a mere 110 votes on any election will

be opposed to a change which will mean that he must obtain possibly 1,000 votes in a larger area. It does not necessarily follow, however, that his position is entitled to greater weight than that of other citizens. The borough secretary acted as spokesman for council, and the individual members, true to their selfish interest, placed their concurrence on the record.

The majority opinion consistently refers to the speeches made on both sides as "testimony." I think that is a misnomer. The persons who appeared were not sworn, the record is not certified by a competent hearing officer and no witness was subjected to questioning except by the commission. Proper cross-examination would have brought out the interest and bias of a number of those who spoke for the opposition. Many of the statements in opposition were merely harangues which it is apparent were based upon personalities, personal prejudices or selfish benefits to the individual.

All of these things were before the commissioners. It was their duty to evaluate the statements and consider all angles. That is what they were appointed for. It is to be assumed that they gave due thought to the performance of their duties and arrived at what they thought to be a fair and just decision. With no criteria to guide either the commissioners or this court, I think that great weight should be given to the report. If the appointment of the commissioners is to be anything more than an empty formality, this court should not substitute its judgment for that of the commissioners who, it is to be presumed, are in a better position to judge the matter than the court. In the absence of an abuse of discretion or evidence of bias, prejudice or some other unworthy motive, the report should be confirmed.

The majority opinion refers to the "vast majority of interested residents" who are opposed to the change. This statement is not supported by the record. It is

true that certain petitions in opposition were presented, containing some 600 names, but that is only about 25 percent of the registered voters of the borough. There is nothing in the record to show how these petitions were obtained, who the signers were nor if the signers knew what they were signing. They were not sworn to. The commissioners could have properly ignored them entirely. The majority opinion completely overlooks the five percent of the voters who signed the original petition and the 22 persons who made statements at the hearings supporting the change.

One woman gave what, to me, seems to be the most practical method of determining this question. She suggested that the whole matter be submitted to the voters in a referendum. That is the best and most democratic way of solving this dilemma. It is truly the American way and part of the philosophy upon which this country was founded: To let the majority rule.

Unfortunately, however, this excellent suggestion cannot be followed. There is nothing in either the Borough Code or the Election Code which would permit the placing of such a question on the ballot. I recommend to the legislature that some thought should be given to amending the appropriate statutes to permit the voters of the borough to express their wishes by means of the ballot.

Among the arguments advanced and adopted by the majority against the abolition of the ward lines is the fact that, if a councilman is elected from a particular ward, he will better represent the citizens of that ward and that there should be a geographical representation on the council. This may be important in some boroughs where there may be an economic, racial or religious division in the different wards. However, I think we may take judicial notice of the fact that in Edwardsville, there is no such condition. Each ward

is largely made up of citizens with the same economic, racial and religious background. The problems of one are, for the most part, the problems of all.

I would dismiss the exceptions.