**Tredyffrin Township Supervisors Election**

*John O. Platt, Jr.*, for petitioners.

*Allen O. Olin,* for objectors.

GAWTHROP, P. J., January 31, 1962.—The board of supervisors of Tredyffrin Township, Chester County, presented their petition under Act of July 13, 1961, P. L. 596, 53 PS §65402, effective immediately, amending section 402 of the Second Class Township Code of May 1, 1933, P. L. 103, as reenacted and amended July 10, 1947, P. L. 1481, further amended July 2, 1953, P. L. 354, seeking an order providing for the election of two additional supervisors in and for said township, based upon a resolution of that board authorizing such application, adopted at a regular meeting held August 14, 1961. A hearing thereon was fixed for September 6, 1961, at 10 a.m., and notice thereof was directed to be given by certified mail to the chairmen of the Democratic and Republican Committees of Tredyffrin Township and by publication in Chester County Law Reporter and Upper Main Line News, a newspaper of general circulation in said township, on August 24 and 31, 1961. On September 1, 1961, a rule was allowed on

the board of supervisors to show cause why their petition should not be dismissed for lack of jurisdiction, returnable September 6, 1961, at 10 a.m.

On September 6, 1961, at 10 a.m., both matters were passed by the court to enable counsel to prepare briefs and subsequently argue the rule to dismiss alone. After argument, that matter is before us for decision. The rule must be discharged.

The pertinent parts of the act are:

"(B) The court of quarter sessions upon petition may provide for the election of two additional supervisors in any township having a population of ten thousand or more. The petition shall be presented by the board of supervisors pursuant to a resolution of such board or by at least five per centum of the registered electors of the township.

"(C) At the first municipal election following the decree of the court providing for the election of two additional supervisors, one of such additional supervisors shall be elected for a term of four years and one shall be elected for a term of six years, each to serve from the first Monday of January next following his election. Thereafter, such additional supervisors shall be elected for terms of six years each to serve from the first Monday of January next following his election."

The rule to dismiss is based on alleged unconstitutionality of the amendment as being an improper delegation to the court of quarter sessions of legislative power in violation of article II, sec. 1, of the Pennsylvania Constitution in its failure to establish any standards or rules to guide the court in performing its function under the act.

Article II, sec. 1, of the Constitution provides:

"1. Legislative power

"The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

The proponent of the rule argues that the act gives the court an unfettered discretion which amounts to abdication by the legislature of its legislative function and a usurpation thereof by the court. We cannot accept that view.

Under section 52 of the Statutory Construction Act of May 28, 1937 P. L. 1019, as amended, 46 PS §552, it is the duty of a court in construing a statute to give it, if possible, an interpretation which will prevent any conflict with the Constitution because of the presumption that the legislature does not intend to violate the Constitution of the United States or of the Commonwealth: Hotel Casey Company v. Ross, 343 Pa. 573; Rubin v. Bailey, 398 Pa. 271. No court should declare an act unconstitutional unless it violates the Constitution clearly, palpably, plainly, and in such manner as to leave no doubt or hesitation in the minds of the court: L. J. W. Realty Corp. v. Philadelphia, 390 Pa. 197. One who seeks to have an act declared unconstitutional assumes the heavy burden of proving beyond all doubt that it is so. The legislature is presumed not only to have put the true interpretation on the Constitution but also to have understood the facts of the particular case, and that it will not wilfully disregard either. All presumptions are in favor of constitutionality of statutes and courts are not to be astute in finding or sustaining objections to them: Hadley's Case, 336 Pa. 100. The objector's burden is to show beyond all doubt that the act is unconstitutional: Sablosky v. Messner, 372 Pa. 47; Loomis v. Philadelphia School District Board of Education, 376 Pa. 428.

It is argued that under the doctrine of separation of powers the statute improperly gives to the court an unlimited discretion, citing O'Neil v. American Fire Insurance Co., 166 Pa. 72; Holgate Bros. Co. v. Bashore, 331 Pa. 255; Kellerman v. Philadelphia, 139 Pa. Superior Ct. 569; Saccone v. Scranton, 341 Pa. 526; Com-

monwealth v. Franklin, 172 Pa. Superior Ct. 152; and In re Dickson City Council, 73 D. & C. 358. Close analysis of its terms indicates the contrary. The act makes a population of 10,000 persons a condition precedent to the filing, consideration and granting of such a petition. The petitioners may be only (1) the board of supervisors pursuant to a proper resolution of the board, or (2) at least five percentum of the registered electors of the township. The court may not act without finding the jurisdictional fact of a minimum population of 10,000 persons, and that the petition is either based upon a sufficient resolution of the board of supervisors or that five percentum of the registered electors have executed the petition, as the case may be. The act limits the court's action to providing for election of two additional supervisors. We cannot conclude that these various provisions establish an unlimited judicial discretion lacking guides or standards.

There is a presumption that the legislature intended to favor the public interest: Statutory Construction Act of May 28, 1937 P. L. 1019, art. IV, sec. 52; 46 PS §552; Commonwealth ex rel. v. Sunbury School District, 335 Pa. 6; Commonwealth ex rel. Shumaker v. New York & Pennsylvania Company, Inc., 367 Pa. 40. In determining a statute's constitutional validity, a court must look to its purpose, object, nature and reasonable effect: Commonwealth of Pennsylvania Water and Power Resources Board v. Green Spring Company, 394 Pa. 1, 6; Gulf Oil Corp. v. Philadelphia, 357 Pa. 101, 119. In the light of recent population growth in the Commonwealth, the object and purpose of the act are obviously to provide greater representation of the electorate and broader division of duties of local government in boards of supervisors of second class townships which have suffered a "population explosion." Reference to local conditions is all that is needed to make this readily apparent, especially in the

"Main Line" area of this county where Tredyffrin lies.

Chester County is composed of one third class city, 15 boroughs and 56 townships, only one of the latter, Caln Township, being a first class township. Tredyffrin, among the remaining 55 second class townships, presently is governed by a board of three township supervisors. Only the city of Coatesville and the boroughs of West Chester and Phoenixville have populations exceeding 10,000. The remaining 13 boroughs all have considerably less than 10,000, and less than Tredyffrin Township. Yet under the Borough Code each borough is governed by a council of not less than seven members, in addition to a mayor as chief executive. Caln Township, under the First Class Township Code, is governed by a board of five commissioners, but the only population requirement for its first class township status is 300 inhabitants per square mile. Its total population is less than Tredyffrin's.

Accordingly, it is the obvious intention of this act that second class townships having a minimum population of 10,000 may, without electoral change to first class township status, and without the resultant greater expense of governmental operation, obtain the representative, legislative, executive and administrative advantages of a five member board of supervisors by application to the court of quarter sessions under the act. If this be true in Chester County, it is no doubt equally true in all sections of the Commonwealth whose populations have sharply increased over recent years. The act is therefore clearly for the public benefit and in the public interest. Its aid may be sought where the jurisdictional fact of 10,000 population minimum is established and application to the court is made either by the board of supervisors pursuant to the required resolution or by five percentum of the registered electors. The choice of the two additional supervisors is left to the electorate.

The words "may provide for the election of two additional supervisors" do not give the court an unlimited discretion to act, thus violating the constitutional doctrine of separation of powers. Where a statute directs the doing of a thing for the sake of justice or for the public benefit the word "may" means the same thing as the word "shall." Where power is given to public officers (here the court of quarter sessions) and the public interest calls for its exercise, the language used, though permissive in form, is in fact peremptory. What public officers are empowered to do for others the law requires them to do. The power is given, not for the officials' benefit but for the benefit of those others in whose interests it was enacted. The intent of the legislature, which is the test, was not to devolve a mere discretion but to impose a positive and absolute duty upon the court: Hotel Casey case, supra, at 579; Melnick v. Melnick, 147 Pa. Superior Ct. 564. In the present circumstances, the court is given no discretion to act. The language of the act is peremptory and the court must act for the benefit and in the interest of the public if the prerequisite facts required by the act appear. Thus there is no unconstitutional delegation of legislative power.

If, however, we assume merely for argument, without conceding, that the words "may provide" are permissive only, rather than peremptory, so as to give the court a discretion to act, the terms of the act nevertheless erect sufficient guides and standards for exercise of that discretion that the act is therefore constitutional. Under article VIII, sec. 11, of the Pennsylvania Constitution, courts of quarter sessions are not purely legal tribunals but are also vested with certain administrative and in a measure representative powers: Petition to Reduce Membership in Bangor Borough Council, 15 D. & C. 2d 588, 597. They have dealt with matters of erection and division of political subdivi-

sions from the earliest days of the Commonwealth, and acts of assembly authorizing them to deal with such questions have been recognized without question as valid: Nester Appeal, 187 Pa. Superior Ct. 313, 317 ff., and numerous cases there cited.

Legislative power is the power "to make, alter and repeal laws": O'Neil v. American Fire Insurance Co., 166 Pa. 72, 76. While the legislature has no right to delegate, or the judiciary to accept, a legislative power which is vested by the Constitution in the legislature (Commonwealth v. Franklin, 172 Pa. Superior Ct. 152), the true test of whether there has been an unconstitutional delegation of such power is well settled. "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend": Locke's Appeal, 72 Pa. 491, 498. It may delegate "the duty to determine whether the facts exist to which the law is itself restricted": Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260. It is sufficient if the recipient of the power is circumscribed by definite standards found from the language of the statute in its entirety: Green Spring Co. case, supra, at page 11. This is such a case.

If the court of quarter sessions may properly deal with erection and division of political subdivisions, there would seem to be no good reason why it may not, subject to finding certain facts specified by the legislature, and in the exercise of a sound judicial discretion always subject to review for abuse thereof, provide for election by the people of two additional supervisors in certain political subdivisions. Furthermore, the doctrine of separation of powers applies with least effect to the judiciary, because when courts are said to exercise discretion the reference is always to judicial discretion within, not without, the bounds of

the law: Franklin case, supra, at page 183: Nester case, supra, at page 320.

The standards set by the act in question, i.e., the limitation as to population, the permissible petitioners, and the fixed number of additional supervisors for election of whom provision may be made, do not represent the discretion of the judges but the statutory law of the Commonwealth. In view of the purpose to be served by the act, no further standards need be fixed, nor need they be in the same detail as are necessary in delegation of powers to administrative officers such as in the O'Neil, Holgate, Kellerman and Saccone cases, supra: Nester case, supra, at page 321.

In Re Dickson City Council, supra, strongly relied upon by the objector, is readily distinguishable. There, no standards whatever for guidance of the court were fixed by the Borough Code. But such standards were fixed in the later amendment thereto held valid in the Bangor Borough case, supra, and in the somewhat different situation arising in Nester's Appeal, supra. We are convinced that sufficient standards here appear to constitute a valid delegation of power to the courts of quarter sessions because the act does not empower those courts, as fact-finding bodies, to create the conditions which constitute the facts. Cf. Marshall Impeachment Case, 363 Pa. 326, 337; Wilson v. Philadelphia School District, 328 Pa. 225, 237. It is no objection, however, that the determination of facts and the inferences to be drawn from them in the light of statutory standards and declarations of policy call for the exercise of judgment: Yakus v. United States, 321 U. S. 414; Marshall case, supra, at page 338.

Finally, the act gives the court only the power to permit the electorate to choose the additional supervisors. Exercise of the right to elect them at a municipal election, as well as to nominate candidates at a

primary held for such purpose, is under the provisions of the Election Code as in the case of other supervisors. Nothing in that procedure involves discretion of the court of quarter sessions.

We conclude that the act in question does not violate the provisions of article II, sec. 1, of the Pennsylvania Constitution.

And now, January 31, 1962, the rule to show cause why the petition of the board of supervisors of Tredyffrin Township should not be dismissed for lack of jurisdiction is discharged. Leave is granted the board of supervisors to list their petition for hearing.